**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
TRAN NGUYEN (SBN 310593)
*tran@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Ave., Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY KOSSICK, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>            v.<br><br>ANTIAGING RESEARCH LABORATORIES, INC., ROBERT BOHEN, RINAJA SOLEIL (individually and d/b/a VITALITY RESOURCES), NEWTRITIONAL HEALTH CARE, LLC, and ROY WILLIAMS (individually and d/b/a VITALITY RESOURCES),<br><br>      Defendants. | Case No.: 15-cv-1076<br><br>CLASS ACTION<br><br>**COMPLAINT FOR:**<br><br>**FALSE ADVERTISING IN VIOLATION OF CALIFORNIA, NEW MEXICO, AND ALABAMA CONSUMER PROTECTION STATUTES;**<br><br>**BREACH OF EXPRESS AND IMPLIED WARRANTIES; AND**<br><br>**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Mary Kossick, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby brings this action against defendants AntiAging Research Laboratories, Inc. ("AARL"), Robert Bohen, Newtritional Health Care, LLC ("Newtritional"), Vitality Resources, Roy Williams, and Rinaja Soleil, and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief including the investigation of her counsel.

## **INTRODUCTION**

1.      For about the past 20 years, defendants have sold a product called Ever Young GH 2000 ("GH 2000") and, after a name change, AEON (collectively the "GH Products"). The GH Products are oral sprays that claim to provide a panoply of health and wellness benefits that Human Growth Hormone ("HGH" or "Growth Hormone") may provide.

2.      In the past, defendants claimed GH 2000 contained *actual* Human Growth Hormone.  But selling HGH in this manner was illegal, and the FDA raided one of defendant AARL's wholesalers that apparently made such claims.   Defendants then stopped expressly stating that the GH Products contained Growth Hormone, and instead began claiming that they contained "Naturally Derived Growth Factor" ("Growth Factor"), supposedly "a proprietary formulation of select amino acids."

3.      Defendants' deliberate use of the initials GH (clearly a reference to Growth Hormone) and of the phrase Growth Factor on labeling and in advertising is highly misleading to consumers, deceiving them into mistakenly believing that the product contains actual Growth Hormone.

4.      Defendants also intentionally create confusion and deception in other ways.  For example, defendants use the phrase "GH Dietary supplement" in the ingredient list of GH 2000 under "Supplement Facts" which itself refers to "Naturally Derived Growth Factor." And AARL's website expressly calls defendants' "growth factor supplement" an "HGH product," stating (emphasis added):

AEON 5000 oral spray growth hormone enhancer and stabilizer is the most potent, highest quality, orally ingestible <u>growth factor supplement</u> available.

1

Anything more powerful and you'd be required to have a prescription. AEON 5000 provides the strongest, most powerful, HGH product that can be obtained anywhere, from any source, at any price.

5.    Defendants actually admit to their confusingly deceptive use of the phrase "Growth Factor." In particular, buried in tiny font within AEON's many website pages is a notice directed to law enforcement followed by a so-called disclaimer that explains that "Growth Factor" is not actual Growth Hormone, clearly showing that defendants understand their use of the phrase Growth Factor is confusing and deceptive.

6.    In addition to its false and misleading use of the initials GH and the phrase Growth Factor, the actual ingredients in defendants' GH Products themselves constitute fraud. Apparently, these products contain virtually nothing other than mere water. But even any amino acids possibly contained in these products are in such miniscule amounts that they cannot possibly provide any of the health and wellness benefits claimed by defendants. For example, GH 2000 supposedly contains 2,000 *nanograms* of Growth Factor in distilled water, meaning that—even crediting this representation—each 30 milliliter (1 fluid ounce) bottle, which defendants sell for as much as $75, contains 29.99998 grams of distilled water with 0.00002 grams of Growth Factor. In other words, each bottle is 99.9999993% water, and 0.000067% so-called Growth Factor.[1]

7.    Rather than provide essentially anything more than water, the GH Products are nothing more than modern-day snake oils. By selling water as a cure-all and veritable fountain of youth, defendants have profited enormously at the expense of their unsuspecting customers.

8.    Plaintiff is a victim of defendants' scam, having relied on defendants' false representations in purchasing thousands of dollars of GH 2000, variously from each defendant, receiving no benefit whatsoever from her purchases. Plaintiff brings this action

---

[1] AARL's renamed product, AEON, comes in two varieties: AEON 3600, and AEON 5000. The former contains just 1800 ng of Growth Factor, and the latter, 2500 ng of Growth Factor.

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

on behalf of herself, the general public, and other consumers who defendants have defrauded, in order to enjoin defendants' unlawful acts, and recover monies defendants' realized through their unlawful, unfair, and deceptive business practices.

## THE PARTIES

9.      Plaintiff Mary Kossick is a resident of South San Francisco, California.

10.     Defendant AntiAging Research Laboratories, Inc. ("AARL") is a California corporation with its principal place of business at 30021 Tomas #300, Rancho Santa Margarita, California, 92688.

11.     Defendant Robert T. Bohen is a resident of Trabuco Canyon, California. Bohen does business as AARL, and is the owner, principal, CEO, and alter ego of AARL. Bohen has authorized, approved, personally committed, actually participated in, and is a principal force behind the acts of AARL complained of herein.

12.     Defendant Rinaja Soleil is a resident of Santa Fe, New Mexico.  Prior to January 2010, Soleil conducted business under the name Vitality Resources. Soleil authorized, approved, personally committed, actually participated in, and was a principal force behind the acts complained of herein. On December 17, 2009, Soleil sold her business, Vitality Resources, to defendant Roy Williams and his other company, Newtritional Health Care, LLC.

13.     Defendant Newtritional Health Care, LLC ("Newtritional") is an Alabama limited liability company, with its principal place of business at 1861 Highway 72, Killen, Alabama, 35645. Newtritional and Roy Williams own Vitality Resources as of December 2009.

14.     Defendant Roy P. Williams is a resident of Killen, Alabama. Williams is the owner, principal, and alter ego of Newtritional and, since December 2009 has also conducted business under the name Vitality Resources. Williams has authorized, approved, personally committed, actually participated in, and is a principal force behind the acts of Newtritional and Vitality Resources complained of herein.

**JURISDICTION AND VENUE**

15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and because one or more of the members of the putative class of plaintiffs is a citizen of a state different from any defendant. Because less than least two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of different states, no exceptions to jurisdiction under 28 U.S.C. § 1332(d) apply.

16.    Alternatively, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action contains claims arising under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

17.    The Court has personal jurisdiction over AARL because its principal place of business is in California. AARL also has substantial, continuous, and systematic contacts with the state of California, and has purposely availed itself of the benefits and privileges of conducting business activities within California.

18.    The Court has personal jurisdiction over Newtritional because it has substantial, continuous, and systematic contacts with the state of California, and has purposely availed itself of the benefits and privileges of conducting business activities within California.

19.    The Court has personal jurisdiction over Bohen because he is a resident of California.

20.    The Court has personal jurisdiction over Soleil because she has substantial, continuous, and systematic contacts with the state of California, and has purposely availed herself of the benefits and privileges of conducting business activities within California.

21.    The Court has personal jurisdiction over Williams because he has substantial, continuous, and systematic contacts with the state of California, and has purposely availed himself of the benefits and privileges of conducting business activities within California.

22.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)-(c), because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district. Moreover, defendants AARL and Bohen reside in Orange County, California, defendant Soleil resides in New Mexico, and defendants Williams and Newtritional reside in Alabama, such that there is not a more appropriate venue.

## INTRADISTRICT ASSIGNMENT

23.     Plaintiff is a resident of the City of South San Francisco in San Mateo County. Pursuant to local rules 3-2 and 3-5(b), this matter should be assigned to the San Francisco division.

## FACTS

**A.    Human Growth Hormone**

24.     Human Growth Hormone, also known as HGH, is a complex molecule, secreted by the pituitary gland, and known to stimulate physical responses in the body, such as growth in children. It also helps regulate body composition, body fluids, muscle and bone growth, sugar and fat metabolism, and possibly heart function.

25.     HGH is available as a prescription drug, approved by the FDA for treating a limited number of conditions: in children, short stature and poor growth due to a number of medical causes, and in adults, short bowel syndrome, HGH deficiency due to rare pituitary tumors or their treatment, and muscle-wasting disease associated with HIV/AIDS.

26.     However, because of its beneficial physical properties, there has been a demand for HGH since the early 1980s by athletes, bodybuilders, and others interested in its purported effects on health and wellness. Despite that HGH use is banned at all levels of athletic competition, common uses for HGH that are *not* FDA-approved include building muscle, improving athletic performance, and reversing the effects of aging.

27.     Because of its limited approved uses, expense, the illegality of possessing or distributing HGH without a prescription, and the danger of injecting HGH, those interested in obtaining the benefits of HGH may seek out alternatives.

28.    In response to the demand for products that provide the benefits of HGH, but which are legal and arguably safer, some dietary supplement manufacturers have developed so-called HGH "enhancers," "releasers" or "boosters," which claim to contain ingredients, usually several grams of various amino acids, that supposedly stimulates the body to increase its own HGH production.

29.    Companies that market these "boosters" often claim their products reverse aging, reduce fat, build muscle, restore hair growth and color, strengthen the immune system, normalize blood sugar, increase energy, and improve sex life, sleep quality, vision, and memory. However, the Federal Trade Commission has said there is no reliable evidence to support claims that these products provide any health benefits, much less the same effects as prescription HGH.[2]

**B.    Defendants' Sale of the GH Products**

30.    Led by Bohen, AARL began selling GH 2000 in 1996. AARL sold GH 2000 to consumers directly via its website, as well as to independent distributors for resale to consumers. One such distributor was defendant Soleil doing business as Vitality Resources. Another was defendant Williams and his company Newtritional.

31.    In December 2009, Soleil no longer wished to sell GH 2000. At Bohen's suggestion, Soleil arranged with Williams (another distributor of GH 2000) to sell her business and customer list.

32.    On December 17, 2009, Soleil sold Vitality Resources to defendant Williams. The sale included the names and addresses of more than 1050 potential customers identified by Soleil and the names, addresses, and phone numbers of 61 active customers.

33.    Although some distributors like Newtritional still sell GH 2000 today, in approximately 2001, AARL, while also continuing to sell GH 2000 until sometime within approximately 2014, created a continuation product by changing the name to AEON, making

---

[2] Prescription HGH is only administered by injection since because HGH is destroyed when digested by the stomach before it can be absorbed into the body.

1   some packaging design changes, and creating two additional versions (AEON 3600,

2   containing 1800 ng of Growth Factor, and AEON 5000, containing 2,500 ng of Growth

3   Factor). Today, AARL sells AEON directly to consumers over its website, as well as to other

4   distributors.

5        34.    Although GH 2000, AEON 3600, and AEON 5000 each supposedly contain or

6   contained slightly different amounts of Growth Factor (2,000 ng, 1800 ng, and 2,500 ng,

7   respectively), those amounts are so miniscule that the products are effectively identical. In all

8   other respects, the "formulation" of the products—really just distilled water in a bottle—is

9   identical. For example, all products contain the same serving size, servings per container,

10  listed ingredients, "does not contain" list, "other ingredients" list, "trace" ingredients,

11  suggested use, disclaimers, and manufacturer.

12       35.    Photographs of GH 2000 are attached hereto as <u>Exhibit 1</u>.

13       36.    A true and correct copy of AEON 3600's label, downloaded from AARL's

14  website, is attached hereto as <u>Exhibit 2</u>.

15       37.    A true and correct copy of AEON 5000's label, downloaded from AARL's

16  website, is attached hereto as <u>Exhibit 3</u>.

17  **C.    Defendants' Marketing and Advertising of the GH Products**

18       38.    Defendants market and advertise the GH Products through a variety of media,

19  mostly online through their websites, where they provide information that sounds scientific

20  and suggests, falsely, that there is a scientific basis for their claims that the GH Products are

21  effective in providing the benefits of HGH. In fact, much of defendants' scientific-sounding

22  representations appear to be pure fabrications.

23       39.    These websites are often dense, with dozens of pages containing innumerable

24  claims and representations, each individually and collectively aimed at convincing potential

25  buyers that the GH Products will either provide HGH directly, or provoke the body to

26  "enhance" or "stabilize" its own HGH production, and thereby result in a wide variety of

27  health and wellness benefits associated with natural human body HGH secretion.

28

40.     However, defendants' many representations are false and misleading. A cursory review shows that such statements are affirmatively false for at least the following reasons: (a) defendants claim that various scientific studies establish the GH Products' efficacy claims, but in fact the "studies" they rely on are not scientific at all, and many are wholly fraudulent with data that defendants intentionally misrepresent or simply manufacture; (b) the few published, peer-reviewed studies involving HGH injections, in dosages hundreds of thousands of times larger than the amount supposedly in the GH Products, do not actually establish defendants' efficacy claims for the GH Products; (c) defendants' representations, particularly in the case of AARL, are frequently contradictory; in fact, defendants make multiple complaints about other HGH supplement manufacturers engaging in the exact misleading practices and representations that defendants engage in; and (d) at the minute levels defendants claim that Growth Factor is present in the GH Products, they cannot possibly have any efficacy as both a matter of common sense and based on legitimate, published, peer-reviewed studies.

### i.   *AARL's GH 2000 Website*

41.     From approximately 1996 to 2014, AARL maintained a website (http://www.everyounggh.com) dedicated to marketing and advertising GH 2000, which is expressly incorporated into this Complaint. Although AARL has since deactivated the website, archived copies of its many pages are available through the Internet Archive (http://archive.org), and true and copies of its various webpages are attached hereto as Exhibit 4.

42.     Nearly all of the copy on the GH 2000 website is written in the first-person by Bohen, who also signs his name at the bottom of many pages, and provides his own testimonial about the supposed benefits of the product to his and his wife's health. Although it would be impractical due to the volume to include all of AARL's representations in this Complaint, the following paragraphs describe and replicate various representations that are illustrative of the entire website, while highlighting the themes relevant to this lawsuit.

43.     According to the AARL website, the company has undertaken "global research effort[s] to find a way to provide you with HGH (Human Growth Hormone) without the painfully expensive somatotropin (Growth Hormone) injections."

44.     GH 2000 contains "the highest concentration of biologically active GH available today," that is "designed to stimulate the pituitary gland to imitate the body's natural secretion of Growth Hormone."

45.     AARL similarly represents that "EVER YOUNG GH 2000 is the first GH product available in a safe and effective oral spray. It contains 2000ng of GH per dose, the highest concentration of biologically active GH available today," and that "Today, GH can be taken orally through the use of EVER YOUNG GH 2000."

46.     AARL further represents that GH 2000 "is a naturally derived, biologically active, growth hormone in the only available polymer matrix of its kind," which "also stimulates the body to manufacture growth hormone and its metabolite IGF-1."

47.     AARL similarly represents that GH 2000's "foundational material is recombinant (naturally synthesized in a pharmaceutical laboratory) somatotropin (HGH) from natural sources," and "GH-2000's formula is entirely unique."

48.     AARL likens GH 2000 to actual HGH injections, stating, "EVER YOUNG GH 2000 is the highest concentration of orally administered EVER YOUNG GH 2000 [sic] available on the market today. Injections of GH taken in international units or I.U.'s are usually prescribed to be taken as a ½ shot, two times per day. The individual would be taking between 2 and 4 I.U.'s per day. EVER YOUNG GH 2000 has over 2000ng per dosage and was created to imitate the body's natural secretion of GH."

49.     In a "Question and Answer" page on GH 2000's website, AARL further represents that:

GH-2000 is distinctly different from so-called HGH "boosters", "stimulators", "promoters", "precursors", "secretagugues", "effervescents", "releasers", "oral dilute sprays", "IGF-1 maximizers", "supporting compounds and synergists", and other similar inferior compounds – whether found in the form of a pill, powder, patch, liquid capsule or spray.

9

These compounds contain NO HGH, even though their labels are carefully worded to make you belief [sic] that they do. (Some companies do admit this, but only in the fine print). These companies want to claim and associate themselves with the headlines and benefits of true HGH, but there's one very big problem. [T]heir compounds are NOT HGH. The lack of a true and effective product is purposely hidden behind all of their hype.

Most of these "stimulator" type compounds are questionable at best. The technological sophistication required to have one's body metabolically produce, transport and deliver a large molecule such as HGH is out of the reach of virtually all supplement companies, and even most pharmaceutical corporations.

The key with HGH is that its molecular structure follows an exact sequence, which must be kept intact for effectively stabilizes the HGH in liquid solution so that the strength of HGH is delivered to you. And importantly, we also provide the precise delivery vector (technological transport and delivery system) necessary to bring this exact sequence and strength of true HGH. No one else can provide this for you.

50.     Elsewhere, AARL further discusses it's supposedly "unique technology" used in GH 2000, stating:

We use a charged micro-encapsulated delivery method. The rGH molecule is very large and wonderfully unique. The rGH properties make it different in the large molecule world. The fundamental principle is cross-linking. If this were insulin, which ironically is much smaller in molecular size, our technology would not be able to have it delivered to your system due to its highly cross-linked, brittle nature. The more cross-links a molecule has, the less elasticity it has. You can stuff a large rubber band through a small hole and pull it out the other side still intact. Metaphorically, this is what we do with GH-2000 oral spray GH. The rest gets technical[.]

51.     In another Question and Answer on the same page, AARL states that "GH-2000's formulation is developed utilizing the highest quality pharmaceutical source Growth Hormone from the leading pharmaceutical manufacturer in America."

52.     Similarly, under a header titled "THE ETERNAL FOUNTAIN OF YOUTH?," AARL states, "Unfortunately, due to the high costs previously associated with GH, only the medical profession and the wealthy have been privy to its benefits. Another problem has been

10

that the large GH molecule, composed of 191 amino acids (protein), had been only effective administered through injections. However, a new technology developed by EVER YOUNG GH 2000 & EverYoung., [sic] now makes GH an effective, affordable and convenient alternative."

53.    More specifically, AARL represents that typical HGH injections of 350,000 nanograms cause "overflow [that] goes into the bloodstream and causes havoc on the bio feedback system of the body," which "acts as a replacement dose of HGH, thereby shutting down the body's own production of HGH" in a "negative feedback cycle." By contrast, according to AARL, GH 2000 "supplies 2000 nanograms of Growth Hormone per day," which "means there is no over-stimulation of the pituitary and thus there is no shutdown of your body's production of Growth Hormone," since "[t]his small amount actually works to enable your own pituitary to produce more of its own GH."

54.    In sum, just as GH 2000's label, by using the term "GH" in the product name and Ingredients List, suggests that the product contains actual HGH, AARL's website repeatedly represents that GH 2000 contains actual HGH.

55.    Besides its representations about what GH-2000 is, AARL represents throughout its website the benefits that GH 2000 supposedly provides to a consumer.

56.    AARL represents that "without EverYoung GH-2000, your body will become: Just a little bit weaker; A bit more fatigued; Your joints will ache just a bit more; Your skin will show just a few more wrinkles; You'll get sick easier; You'll look a little older."

57.    As a result, AARL states that "[a]ny adult over 25 who is experiencing the effects of aging and who wants to look and feel younger by reversing the aging process should consider taking EverYoung GH-2000. Naturally raising one's HGH levels has been proven to turn back the negative effects of aging such as changes in body fat, muscle mass, bone density, skin quality and loss of energy that occur during 10-20 years of aging."

58.    Moreover, AARL sets forth the following supposed "[r]eported benefits from users: Feeling better, looking better, having more energy; Elevated mood; Enhanced sexual desire; Better complexion and skin; Fuller, more beautiful hair; Heightened sex drive; More

11

frequent erections; Deeper, more restful sleep; Vivid dreams; Improved memory shparness; Increased energy/vitality; More acute brain function; Strengthened immune system; Reduced joint pain & stiffness; Reduced fat/cellulite; Lean muscle development; Strengthened bones; Improved injury and wound healing time; Greater flexibility; Restored color to graying hair; Reducing Menopausal hot flashes; Increase metabolism; Supports cardiac/heart function; Begin to breathe more easily and deeply; Restore collagen levels to erase lines and wrinkles; Sharpens vision; Help bring other hormones into normal ranges; Increase sense of well-being and emotional stability."

59.    AARL's GH 2000 website repeatedly represents that GH 2000 is effective in treating and preventing disease.

60.    According to AARL, for example, "[d]ue to the powerful regenerative effects of . . . EverYoung GH-2000 Oral Spray GH on the organs and the overall systems of the body, we have had many clients after six months to one year therapy, enjoy the absence of symptoms (aches, skeletal, and immune deficiency and other maladies) . . . ."

61.    AARL also represents that GH 2000 is appropriate for those with "type 2 diabetic [sic] and those with auto-immune issues such as Fibromyalgia[,] chronic fatigue, arthritis, etc. and those who want to slow down your [sic] aging process…"

62.    Elsewhere, AARL states

We have had clients claim that their cancer went into remission for whatever reason. For legal purposes, we cannot stay that our compounds have any effect on cancer, and because other conjunctive treatments were perhaps done as well.

Two medical researchers, Dr. Chen and Dr. terry functioned [sic] treated over 800 patients with high doses of HGH injections to patients for two years. As of their last report, there have not been any reports of cancer from any of their patients. . . . Possibly, since cancer seems to be result [sic] of an immune deficiency and HGH strengthens the immune system, this maybe [sic] a cause and effect. Besides if growth hormone caused cancer, teenagers who are roaring with it would all have cancer. Based on my studies, I believe a lack of it is one of the critical factors why we develop cancer later in life.

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

We have dealt with thousands of clients over many years. No one has ever called about our micro-encapsulated GH causing cancer. Therefore, along with many Doctors and Scientists, I would say it would seem to make a positive different [sic] to supplement with GH.

63.    AARL further states, in a Question and Answer page, in response to the question, "Will HGH supplementation help me lose weight and body fat?," "Yes. Declining levels of HGH can cause us to gain unwanted pounds too easily as our metabolisms slow down and we become older. However, with GH-2000, you can directly address this very critical reason as to why you're unable to effectively lose weight and body fat, and keep it off."

64.    Although AARL occasionally references clinical studies that it either states expressly or implies were done with respect to GH 2000, in fact those references are to things like statements made by various authors of books discussing HGH generally, or studies concerning HGH injections in amounts hundreds of thousands of times greater than was is (supposedly) in GH 2000 (although in reality, GH 2000 does not contain *any* HGH). No clinical studies have been performed on GH 2000 or AEON.

*ii.    AARL's AEON Website*

65.    From approximately 2001 to the present, AARL has maintained a website (http://www.antiagingresearch.com) dedicated to marketing and advertising AEON, which is expressly incorporated into this Complaint.[3] A true and correct copy of its many pages are attached hereto as Exhibit 5.

66.    Much of the copy AARL used to advertise GH 2000 on the now-defunct website is verbatim identical to that used to market and advertise AEON. At the same time, AARL has added a variety of new claims and representations.

67.    For example, on a page accessible by clicking a link called "*ANY* HGH Capsule is a SCAM," AARL states:

///

---

[3] AEON 3600's label refers to another website, www.IdealAge.com. That website directs the browser immediately to http://www.antiagingresearch.com.

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

1   ///
2   ///
3   ///

### WARNING

You may be being tricked by dishonest "HGH suppliers" …

### FACT:

Amino acids "mock" HGH to the liver. This consistently provides a false elevation of serum IGF-1, allowing you to be tricked by dishonest "HGH" suppliers claiming to elevate your natural growth hormone levels. [ . . . ]

### FACT:

The amino acid arginine will increase HGH levels for approximately five weeks at thirty gram daily doses, which are dangerously high levels to the liver and kidneys, *for only five weeks*. Any dose lower will not.

The next time you see a pill, capsule, fizzie, or spray check the ingredients. If the source material is not recombinant, bio-identical, Human Growth Hormone, do not buy it.

[ . . . ]

There are many products that claim to increase growth hormone. Most of these are some combination of amino acids containing arginine, ground up cow pituitary, and/or herbal supplements. [ . . . ]

If there is any "science" behind these products, the only "science" is based on a Somatomedin C (IGF-1) test providing a false read.

### These products cannot work. It is scientifically impossible

The creators of these supplements hide behind a false tests [sic] or they use "bait and switch" third party clinical studies based on actual HGH injections to mislead you, which is illegal.

[ . . . ]

As you will see, there is no evidence that amino acids directly increase HGH, except at very high doses of approximately 30 grams and this is for a few weeks

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

only. These massive doses are not practical and can be harmful to the kidneys and liver as well.

[ . . . ]

What about some of these homeopathic growth hormone products?

Fact

Indeed, many homeopathic preparations do appear to have some value, BUT THE VERY LAW OF HOMEOPATH DOES NOT ALLOW FOR, NOR PROVIDE FOR THE PROCESSING OF AN HGH MOLECULE.

It simply cannot possibly work. It violates every aspect of known science. Additionally, the odds of just one HGH molecule inside of a one ounce bottle of a homeopathic 30x HGH preparation are trillions to one.

Where is the molecule?

How can a homeopathic HGH product (30x) have 1 molecule of HGH & parts of
1,000,000,000,000,000,000,000,000,000,000
alcohol, water or glycerin have any therapeutic value?

*Try to fathom this:* This number is the equivalent of a container of alcohol, water or glycerin more than 30 million times the size of our solar system's sun relative to one molecule of Growth Hormone.

One Molecule…

Furthermore, based on such "formulations", the odds of you getting even one single molecule of Growth Hormone in the bottle you purchased?

Trillions and trillions and trillions to one.

Supposedly, this "essence" of the homeopathic growth hormone molecule, mega-trillions times smaller than an actual growth hormone molecule, somehow as [sic] a therapeutic value. This either violates every neuron of logic we possess or we all here at AntiAging Research Laboratories missed class that particular day on quantum theory.

68.    Incredibly, and despite AARL's many express representations and suggestive statements that the GH Products contain actual HGH, the very practices AARL so strongly criticizes—the use of amino acids to stimulate HGH production, and the use of homeopathic HGH supplements—are its own exact practices, as admitted in the following small-font disclaimer (with emphasis added) at the bottom of some AEON website pages:

> LEGAL DISCLAIMER: These statements have not been evaluated by the FDA and are not intended to diagnose, treat, cure, mitigate or prevent any disease. OTC AEON is a nutritional supplement. *All references to recombinant HGH oral spray are in reference to the original oral HGH which was co-developed in 1996 under research conditions, and in compliance with Title 21 law. All AEON and related products contain only growth factor (GF) (a proprietary formulation of select amino acids) which has always been stated on our label. Dietary supplements cannot contain HGH if there is any potential for abuse, as stipulated by Title 21 USC Part B, 811, g. OTC's may be further exempted under additional articles of TITLE 21. Additionally, OTC AEON is further produced according to the guidelines of the HPUS.[4] AEON is not a drug, nor a new drug; it is a nutritional dietary supplement intended for hormonal balance provided through nutritional support. Furthermore, with respect to our AEON and Somastatin products, in order to comply with current FTC requirements, we must state all anti-aging benefits referencing somatotropin are associated with parenteral therapy.

69.    This fine-print representation that AEON (basically the same product as GH 2000) is homeopathic, although not on AEON's label, is corroborated by GH 2000's label, which states, "Homeopathic dietary supplement." Moreover, AARL's GH 2000 website states in a small-print disclaimer on each page that "OTC GH-2000 is produced according to the guidelines of the HPUS." HPUS is the acronym for The Homœopathic Pharmacopœia of the United States.

70.    AARL's AEON website shows consciousness of AARL's fraud. In the same fine-print disclaimer, AARL directs the following comments to law enforcement:

> It is AARL's absolute commitment to always comply with FDA and FTC requirements. If you are a government agent or contractor examining our website,

---

[4] Refers to the Homeopathic Pharmacopoeia of the United States, the official compendium for homeopathic drugs in the U.S.

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

products and related data within an official capacity in search of legal compliance, we welcome your valued feedback in consideration of the ever changing Title 21 regulations that may be subject to interpretation, as evidenced by current and pending Supreme Court 1st amendment rulings. If there is anything you believe that is not in legal compliance, please reference the specific locations(s) of the information in question, and the appropriate recommendation of change(s) you require and please send it to our address. We will make the requested changes and provide you with a prompt notification of such changes

### iii.    *Vitality Resources' GH 2000 Website*

71.    Vitality Resources at one time maintained a website (http://www.beyoungerlonger.com) dedicated to marketing and advertising GH 2000, which is expressly incorporated into this Complaint.. Although Vitality Resources has since deactivated the website, archived copies of its several pages are available through the Internet Archive, true and correct copies of which are attached hereto as Exhibit 6.

72.    Vitality Resources' website borrows much of its content from AARL's GH 2000 website, but also contains some independent representations, all aimed at the same underlying message, that GH 2000 will provide or boost HGH in the consumer's body and thereby provide a host of benefits. For example, Vitality Resources states:

> We have been researching and documenting results of 1,000's of people taking various growth hormone and other rejuvenating formulas since early 1998. As a result of our experience with a wide variety of products in the rapidly expanding age-reversal marketplace, we are very confident about promoting Ever Young Anti-Aging Formulas. Growth hormone, HGH or GH, technically named somatotropin, is the naturally occurring substance in our bodies responsible for the cellular regeneration of our organs, skin, muscles, bones - virtually all body tissue. It also plays an important role in endocrine system balance, enzyme function, immune performance and brain function. Because our own GH production begins a 14% per decade decline at approximately 20 years of age, we usually begin noticing the effects of aging sometime in our 30's. As we continue to secrete less and less growth hormone, the aging process accelerates. When we supplement with Ever Young GH 2000 and/or the other Ever Young Anti-Aging Formulas, we literally experience rejuvenation which manifests as: increased energy and stamina, improved mental function, stronger emotional well-being, better sleep patterns, excess fat loss, lean muscle gain, improved

sexual performance, more effective digestion, enhanced immunity, reduction of wrinkles and cellulite and many more rejuvenating benefits.

73.    Like AARL, Vitality Resources claims that GH 2000 contains actual HGH, despite that it actually contains (supposedly) only a miniscule amount of Growth Factor, *i.e.*, a blend of amino acids. Specifically, Vitality Resources represents that GH 2000 "contains 2000ng of GH per dose, the highest concentration of biologically active GH available today . . . ." Vitality Resources claims the product "is designed to stimulate the pituitary gland to imitate the bod's [sic] natural secretion of Growth Hormone."

### iv.    *Newtritional's GH 2000 Website*

74.    Newtritional maintains a website (http://www.dietersdelite.com) dedicated, in part, to marketing and advertising GH 2000, which is expressly incorporated into this Complaint. True and correct copies of the portions of Newtritional's website related to the marketing and advertising of GH 2000 are attached hereto as Exhibit 7.

75.    On the primary page dedicated to GH 2000, Newtritional represents as follows:

Ever Young by Vitality Resources

Vitality Resources - a company dedicated to anti-aging, longevity and optimum quality of life. We have been researching and documenting results of 1,000's of people taking various growth hormone and other rejuvenating formulas since early 1998. As a result of our experience with a wide variety of products in the rapidly expanding age-reversal marketplace, we are very confident about promoting Ever Young Anti-Aging Formulas. Growth hormone, HGH or GH, technically named somatotropin, is the naturally occurring substance in our bodies responsible for the cellular regeneration of our organs, skin, muscles, bones - virtually all body tissue. It also plays an important role in endocrine system balance, enzyme function, immune performance and brain function. Because our own GH production begins a 14% per decade decline at approximately 20 years of age, we usually begin noticing the effects of aging sometime in our 30's. As we continue to secrete less and less growth hormone, the aging process accelerates. When we supplement with Ever Young GH 2000 and/or the other Ever Young Anti-Aging Formulas, we literally experience rejuvenation which manifests as: increased energy and stamina, improved mental function, stronger emotional well-being, better sleep patterns, excess fat loss, lean muscle gain, improved sexual performance, more effective digestion, enhanced

immunity, reduction of wrinkles and cellulite and many more rejuvenating benefits. Please select the different options on our menu to learn more about how Ever Young GH 2000 can effect [sic] your aging process and enhance the quality of your life. If you have further questions, please contact us so that we can give you personal attention.

76.    A link at the bottom of this page states, "Read More," and directs the browser to an eight-page brochure, a true and correct copy of which is attached hereto as Exhibit 8. The brochure repeats many of the representations found on AARL's and Vitality Resources' websites.

**D.    Contrary to Defendants' Representations, the GH Products Are Nothing More than Bottled Water**

77.    The GH Products are sold as 30ml (1 fluid ounce) spray bottles. Although defendants have at various times represented that the GH Products contain actual HGH, this is false: as defendants admit in fine print, the GH Products in fact contain only between 1,800ng and 2,500ng of Growth Factor (a blend of amino acids).[5] Although defendants label the GH products as containing other ingredients in "Trace" amounts, the Growth Factor itself—if it really is even in the GH Products—is also a trace amount.

78.    Each bottle of the GH products is 29.99998 grams (1 gram is equivalent to 1 milliliter) of distilled water with 0.00002 grams (1 nanogram is equivalent to $10^{-9}$ grams) of Growth Factor or, put in terms of percentage, 99.9999993% water, and 0.000067% Growth Factor.

---

[5] If the GH Products ever did contain actual HGH, AARL and the other defendants would have possessed, sold, and distributed it in violation of federal criminal and civil statutes. *See* 21 U.S.C. §§ 321(g), 333(d)-(e); *compare* FDA Warning Letter to Atlas Operations concerning "GH.X Growth Hormone Extreme" (June 4, 2010), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm215918.htm.    Despite this, AARL misrepresented to consumers on its GH 2000 website that "Under the 1994 DSHEA guidelines, low dosage, orally taken GH can be purchased without a prescription. . . . Hormones, such as progesterone, testosterone, DHEA and oral GH, may be marked and sold as dietary supplements. The hormones fall into the category of foods and not drugs when they are produced in a safe form such as tablet, cream or liquid."

19

79.    As AARL admits in fine print, Growth Factor is a blend of amino acids. Extensive scientific testing of a wide variety of amino acids has demonstrated that they must be consumed in amounts hundreds of thousands of times greater for any efficacy. For example, at least 5g and perhaps as much as 9g of L-arginine must be ingested orally to see a response in serum GH.[6] Similarly, about 2g of L-glutamine must be ingested orally to see a response in serum GH.[7] Likewise, 12g of L-ornithine taken orally may increase serum GH, but amounts between 3g and 10g will not.[8] Even in combination, the levels of amino acids present in the HGH Products generally are ineffective, with one study showing that 1g L-arginine, 1g L-ornithine, and 1g L-lysine, taken after a 1.5-hour fast, was insufficient to increase serum GH,[9] and another study showing, that a mixture of 3g L-arginine and 3g L-lysine "is not a practical means of chronically enhancing GH secretion in old men."[10]

80.    Thus, even if defendants' representations that the GH Products really do contain something called Growth Factor (which practicality deems highly unlikely), at 2,000ng, an

---

[6] *See* S.R. Collier, E. Collins, and J.A. Kanaley, *Oral arginine attenuates the growth hormone response to resistance exercise*, J. Appl. Physiol. 101: 848-52 (2006); S.R. Collier, D.P. Casey, and J.A. Kanaley, *Growth hormone responses to varying doses of oral arginine*, Growth Horm. IGF Res. 15(2): 136-39 (Apr. 2005); Lambert MI, Hefer JA, Millar RP, and Macfarlane PW, *Failure of commercial oral amino acid supplements to increase serum growth hormone concentrations in male body-builders*, Int J Sport Nutr. 1993 Sep;3(3):298-305 (2.4-g arginine/lysine supplement did not consistently alter serum GH concentrations in healthy young men).

[7] *See* TC Welbourne, *Increased plasma bicarbonate and growth hormone after an oral glutamine load*, Am. J. Clin. Nutr. 61(5): 1058-61 (May 1995).

[8] *See* Lambert, *supra* n.**Error! Bookmark not defined.** (1.85g ornithine/tyrosine supplement did not consistently alter serum GH levels in healthy young males).

[9] GM Fogelholm, HK Naveri, KT Kilavuori, and MH Harkonen, *Low-dose amino acid supplementation: no effects on serum human growth hormone and insulin in male weightlifters*, Int. J. Sport. Nutr. 3(3):290-97 (Sept. 1993).

[10] E. Corpas, M.R. Blackman, R. Roberson, D. Scholfield, and S.M. Harman, *Oral arginine-lysine does not increase growth hormone or insulin-like growth factor-I in old men*, J. Gerontol. 48(4):M128-33 (July 1993) [hereinafter "Corpas"].

entire bottle of GH 2000 contains just 0.00004% of the low-end of the amount of L-arginine needed, and just 0.0001% of the amount of L-glutamine needed to see a response in HGH secretion.

81.    Even if the GH Products ever contained actual growth hormone, the GH Products would still be ineffective. First, Growth Hormone is destroyed by digestion and therefore needs to be injected directly into the central nervous system. Second, the miniscule amount in a 2,000ng dose is far short of a typical dose of HGH injection, which is around 1mg, or 1,000,000ng.

**E.    Defendants Misrepresent Mainstream Literature on HGH**

82.    As support for its efficacy claims, AARL cites a 1990 study by Dr. Daniel Rudman, published in the *New England Journal of Medicine*.[11] In the Rudman study, researchers injected 12 men, ages 61 to 81, who were apparently healthy but had IGF-1 levels below those found in normal young men, with hormone injections 3 times a week for 6 months, and compared their results to a control group of 9 men who received no injections. Researchers found the HGH treatment resulted in a decrease in adipose tissue and increases in lean muscle mass and lumber spine density. But the study noted that it had not examined whether HGH treatment substantially improved muscle strength, mobility, or quality of life, and warned of potential side effects, and that the long-range effects of administering HGH to healthy adults were unknown.

83.    Comparing their GH Products to real, FDA approved HGH injections is false and misleading. In March 2003, the *New England Journal of Medicine* came out against this kind of misleading marketing (emphasis added):

> We are especially concerned because the promotional e-mails are apparently sending readers to our Web site; the 1990 article by Rudman et al. receives as many "hits" in a week as other 1990 articles do in a year. If people are induced to buy a "human growth hormone releaser" on the basis of research published in the Journal, **they are being misled**. In order to warn those who visit our Web site

---

[11] Rudman, D., *et al.*, "Effects of human growth hormone on men over 60 years old," New Engl. J. Med. 323:1-6 (1990).

for this reason, this Perspective article and Dr. Vance's commentaries will from now on appear with the article by Rudman et al. each time it is downloaded.[12]

**F.     The GH Products are Not Homeopathic**

84.     Not only do defendants improperly rely on Rudman and others, but the GH Products, which defendants claim are "produced according to the guidelines of the HPUS," bear no resemblance to the HGH administered to the research subjects by injection. As AARL admits on its AEON website, it is inconceivable that a homeopathic HGH remedy could be effective in stimulating the human body's release of HGH. Homeopathy relies on the "law of similars," a notion that the symptoms of disease, ailment or condition can be cured by extremely small amounts of substances that produce similar symptoms in healthy people when administered in large amounts."[13] This notion has been thoroughly discredited.

85.     It is doubtful, however, whether the GH Products really are homeopathic.

86.     First, their doses are of relatively high concentration compared to most homeopathic dilutions. For example, GH 2000's dose is equivalent to 0.000002 grams, or a homeopathic dilution of 6X, which is quite low (e.g., high concentration) compared to most homeopathic dilutions.

87.     Second, AARL's advertising does not suggest that it follows the laws of homeopathy, like the law of similars. Similarly, such purported homeopathic remedies use alcohol to some extent as a base, as its use is important to homeopathic preparation, but the GH Products' base is only distilled water.

88.     Third, there is no monograph in the HPUS for either growth hormone, individual amino acids, or defendants' purported proprietary blend of amino acids (what they call "Growth Factor").

---

[12] Drazen, J.M., *Inappropriate advertising of dietary supplements*, New Engl. J. Med. 348:779-80 (2003) (emphasis added).

[13] *See* FDA, Inspections, Enforcement, and Criminal Investigations, Compliance Policy Guides § 400.400, "Conditions Under Which Homeopathic Drugs May be Marketed"

22

89.    Instead, it appears defendants labeled and represented the GH Products to be homeopathic either to induce consumers into purchasing them, or in an attempt to avoid civil, and possibly even criminal, liability, or both.

90.    Ultimately, defendants knew they could sell small vials of water for $75 and simply call it homeopathy.

### G.    Defendants' Deceptive Omissions

91.    Defendants have not performed any clinical testing of the GH Products, but nevertheless repeatedly reference studies regarding the efficacy of HGH via FDA-approved injection. By doing so, defendants deceptively omit that studies showing the effects of injected HGH replacement therapy do support their claims that the GH Products are effective. In making these omissions, defendants wanted potential customers, including plaintiff, to equate the positive benefits of FDA-approved HGH administration with the GH Products, which, as described above, cannot possibly provide any health or wellness benefits.

92.    Each of the defendants deceptively omitted in their various marketing mediums that the GH Products do not contain actual HGH or a bio-synthetic HGH. Rather, through deceptive omission, defendants allowed plaintiff and other purchasers to believe that GH 2000 contained actual HGH.

### H.    Plaintiff's Purchased GH 2000 In Reliance On Defendants' Misleading Marketing And Statements, and Saw No Results

93.    From at least August 2005 through approximately February 2014, plaintiff purchased GH 2000 from both Vitality Resources and, starting in approximately January 2010, from Newtritional. As described herein, both marketed the product with the same or similar representations made by its manufacturer, AARL.

94.    Through defendants' marketing and advertising statements, including statements of the type described herein, plaintiff was led to believe that GH 2000 contained actual HGH; that it was effective in providing her body HGH, as well as increasing her body's own HGH production; and that by doing so, she would realize a wide variety of health and wellness benefits of the sort defendants tout, especially with respect to increasing her energy,

restoring and protecting organ function, and making her look and feel younger. Plaintiff purchased GH 2000 in reliance on these statements.

95.    After using GH 2000 for some time and not seeing or feeling any of the promised results or benefits, plaintiff had her blood HGH levels tested. The test showed that her HGH levels were low, not increased as she expected based on defendants' claims and representations.

96.    Plaintiff confronted Soleil (from whom she was then purchasing GH 2000), who stated that she would confer with Bohen and AARL. Soleil then told plaintiff that tests were inaccurate, and that levels could vary depending on time of day and other conditions, such that she should not put too much weight on what the tests showed. Soleil convinced plaintiff to continue purchasing GH 2000.

97.    Plaintiff estimates that she has spent more than $2,000 on GH 2000, despite that it is now apparent to her that the product never was, and never could be, effective, but instead was simply bottled water, and that she was a victim of defendants' misrepresentations and fraudulent business practices.

98.    Plaintiff first discovered defendants' fraud in about April 2014. Before that time, in the exercise of reasonable care, plaintiff did not and could not have known facts that would make an objectively reasonable person aware of a substantial possibility that an injury occurred, that the injury harmed one or more of her legally protected interests, and that defendants were responsible for her injury or injuries.

## I.    The GH Products' Labeling Violates Federal & State Regulations

99.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* governs the sale of foods, drugs, and cosmetics in the United States.

100.    The FDCA prohibits the manufacture, sale, distribution, and receipt of any food, drug, or cosmetic deemed to be "misbranded," that is, if it meets any of the definitions of misbranding set forth in §§ 343, 352 or 362. *See* 21 U.S.C. §§ 331(a)-(c), (g).

101.    The Act also prohibits the sale of any "new drug, unless an approval of an application . . . is effective with respect to such drug." 21 U.S.C. § 355(a).

24

102.   A "new drug" is "[a]ny drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under contains prescribed, recommended, or suggested in the labeling thereof," 21 U.S.C. § 321(p).

103.   The Act defines "food" as "articles used for food or drink for man or other animals," 21 U.S.C. § 331(f).

104.   The Act defines "drug" as:

(A) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).

21 U.S.C. § 331(g)(1).

105.   The Act defines "dietary supplement," in part, as a product intended to supplement the diet that bears or contains one or more vitamins, minerals, herbs or other botanicals, amino acids, or substances for use by man to supplement the diet by increasing the total dietary intake; or concentrates, metabolites, constituents, extracts, or combination of any of the foregoing. 21 U.S.C. § 321(ff)(1)(A)-(F).

106.   The Act provides that "a dietary supplement shall be deemed to be a food" under the Act "[e]xcept for purposes of paragraph (g)," 21 U.S.C. § 321(ff)(3).

107.   Section 321(g), in turn, provides that while "(C) articles (other than food) intended to affect the structure or any function of the body of man or other animals" are drugs, a "dietary supplement for which a truthful and not misleading statement is made in accordance with section 343(r)(6) of this title is not a drug under clause (C) solely because the label or the labeling contains such a statement." 21 U.S.C. § 321(g).

108.   The Act provides that dietary supplement labeling may include claims about the supplement's effect on the structure or function of the human body, provided that "the

25

manufacturer of the dietary supplement has substantiation that such statement is truthful and not misleading," as long as it provides, "prominently displayed in and boldface type," a "black box" disclaimer that the "statement has not been reviewed by FDA and that the product is not intended to diagnose, treat, cure, or prevent any disease," and does not "claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6).

109.    21 C.F.R. § 101.93 contains specific requirements for descriptive claims on dietary supplements that are neither nutrient content claims nor health claims as defined by 21 U.S.C. § 343(r), but instead the "structure/function" claims permitted by §§ 321(g) & 343(r)(b).

110.    Specifically, dietary supplement labels may:

bear statements that describe the role of a nutrient or dietary ingredient intended to affect the structure or function in humans or that characterize the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, provided that such statements are not disease claims under paragraph (g) of this section.

21 C.F.R. § 101.93(f).

111.    Paragraph (g) provides that "a 'disease' is damage to an organ, part, structure, or system of the body such that it does not function properly (e.g., cardiovascular disease), or a state of health leading to such dysfunctioning (e.g., hypertension); except that diseases resulting from essential nutrient deficiencies (e.g., scurvy, pellagra) are not included in this definition." 21 C.F.R. § 101.93(g)(1).

112.    Paragraph (g)(2) further provides that "consider[ing] the context in which the claim is presented," a statement on a dietary supplement's label will be considered a prohibited disease claim because it:

claims to diagnose, mitigate, treat, cure, or prevent disease if it claims, explicitly or implicitly, that the product:

(i)        Has an effect on a specific disease or class of diseases;

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

(ii)    Has an effect on the characteristic signs or symptoms of a specific disease or class of diseases, using scientific or lay terminology;

(iii)    Has an effect on an abnormal condition associated with natural state or process, if the abnormal condition is uncommon or can cause significant or permanent harm;

(iv)    Has an effect on a disease or diseases through one or more of the following factors:

(A)    The name of the product;

(B)    A statement about the formulation of the product, including a claim that the product contains an ingredient (other than an ingredient that is an article included in the definition of "dietary supplement" under 21 U.S.C. 321(ff)(3)) that has been regulated by FDA as a drug and is well known to consumers for its use or claimed use in preventing or treating a disease;

(C)    Citation of a publication or reference, if the citation refers to a disease use, and if, in the context of the labeling as a whole, the citation implies treatment or prevention of a disease, e.g., through placement on the immediate product label or packaging, in appropriate prominence, or lack of relationship to the product's express claims;

(D)    Use of the term "disease" or "diseased," except in general statements about disease prevention that do not refer explicitly or implicitly to a specific disease or class of diseases or to a specific product or ingredient; or

(E)    Use of pictures, vignettes, symbols, or other means;

(v)    Belongs to a class of products that is intended to diagnose, mitigate, treat, cure, or prevent a disease;

(vi)    Is a substitute for a product that is a therapy for a disease;

(vii)    Augments a particular therapy or drug action that is intended to diagnose, mitigate, treat, cure, or prevent a disease or class of diseases;

(viii)    Has a role in the body's response to a disease or to a vector of disease;

(ix)    Treats, prevents, or mitigates adverse events associated with a therapy for a disease, if the adverse events associated with a therapy for a disease, if the adverse events constitute diseases; or

(x)    Otherwise suggests an effect on a disease or diseases.

21 C.F.R. § 101.93(g)(2).

113.    If a dietary supplement contains such a disease claim, "the product will be subject to regulation as a drug unless the claim is an authorized health claim for which the product qualifies." 21 C.F.R. § 101.93(f).

114.    California's counterpart to the FDCA, known as the Sherman Law, incorporates the FDCA's regulations. Cal. Health & Safety Code § 110100.

### i.    *The GH Products Are Unapproved New Drugs*

115.    The GH Products are subject to the FDCA's drug regulations because they bear claims that they are "intended to affect the structure or any function of the body of man."

116.    Examples of such claims include:

- Elevated mood

- Enhanced sexual desire

- Better complexion and skin

- Fuller, more beautiful hair

- Heightened libido

- More frequent erections

- Deeper, more restful sleep

- Improved memory sharpness

- More acute brain function

- Strengthened immune system

- Reduced joint pain & stiffness

- Help bring other hormones into normal ranges

- Lean muscle development

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

- Strengthen and fortify bones
- Improved injury and wound healing time
- Greater flexibility
- Reducing Menopausal hot flashes
- Supports cardiac/heart function
- Begin to breathe more easily and deeply
- Restore collagen levels to erase lines and wrinkles
- Sharpens vision
- Vivid dreams
- Decrease body fat
- Improve cholesterol and triglyceride levels
- Regenerate damaged tissue

117.   The GH Products are separately and independently also subject to the FDCA's drug regulations because they bear disease claims that are not authorized health claims. 21 C.F.R. § 101.93(f).

118.   Specifically, the GH Products' labels make disease statements within the meaning of 21 C.F.R. § 101.93(g)(2) as follows:

    a.   GH 2000 violates 21 C.F.R. § 101.93(g)(2)(iv)(A) because the name of the product, incorporating "GH" (the abbreviation for Growth Hormone) suggests it has an effect on disease or diseases related to reversing the effects of the aging process, and for which human growth hormone is FDA approved by prescription;

    b.   AEON 3600 violates 21 C.F.R. § 101.93(g)(2)(iv)(A) because the phrase "INGESTIBLE GROWTH HORMONE" suggests it has an effect on disease or diseases related to reversing the effects of the aging process, and for which human growth hormone is FDA approved by prescription;

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

c.  AEON 5000 violates 21 C.F.R. § 101.93(g)(2)(iv)(A) because the phrase "Physician's Strength" implies the product is by prescription, or prescription strength, and thereby "suggests an effect on a disease or diseases," *id.* § 101.93(g)(2)(x).

119.  Further, as previously alleged, defendants make several statements online and through written materials including brochures that are considered part of the GH Products' labeling, which comprise disease claims.

120.  In sum, the GH products are rendered drugs by (a) the use of structure and function claims and (b) its use of disease claims, in violation of 21 C.F.R. § 101.93(f).

## ii.    The GH Products are Mislabeled and Misbranded

121.  A food, including a dietary supplement, is misbranded if "its labeling is false or misleading in any particular," 21 U.S.C. § 343(a)(1).

122.  A drug is also misbranded if "its labeling is false or misleading in any particular," 21 U.S.C. § 352(a), as well as if its labeling does not bear "adequate directions for use," *see id.* § 352(f)(1).

123.  As set forth above, defendants' claims are false and misleading because the GH Products do not stimulate the body to release or produce HGH, and do not contain actual HGH. Since the GH products are both a food and drug, they are misbranded pursuant to both 21 U.S.C. §§ 343(a)(1) and 352(a).

124.  Moreover, the defendants' use of disease claims, rendering the GH products a drug, further renders them misbranded under 21 U.S.C. § 352(f)(1), since the labeling fails to bear adequate directions for use.

125.  These violations also cause the GH products to be misbranded under California's Sherman Law, for example, Cal. Health & Safety Code §§ 110100(a), 110660.

## PLAINTIFF'S RELIANCE & INJURY

126.  Plaintiff purchased GH 2000, which is the functional and practical equivalent of AEON, relying on defendants' claims alleged herein, for example, that it either contains HGH or stimulates the body to increase its HGH production, and thereby provides the numerous

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

health and wellness benefits. These representations were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers (including the putative class) acting reasonably because the GH Products do not contain HGH, are ineffective in stimulating the body to increase its HGH production, and do not provide the numerous health benefits defendants claim.

127.   Because the GH products were and are ineffective, their true value is $0, and plaintiff and other purchasers were injured in the amount of their purchases.

128.   Even if the GH products have or had some inherent value (for instance the value of 1 ounce of water), that value is well below their actual cost, as much as $75 per bottle, and plaintiff and the class members would not have been willing to pay what they did, or anything at all, had they known the truth about the GH Products' claims and efficacy.

129.   By using false and misleading claims, defendants were able to command a market price for the GH products significantly above a fair market price, and above what their prices would have been absent use of the false and misleading statements.

## CLASS ACTION ALLEGATIONS

130.   Pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a class of all persons in the United States who purchased the GH Products for personal, family, or household use, and not for resale.

131.   Plaintiff also seeks to represent a subclass of all persons in California who purchased the GH Products for personal, family, or household use, and not for resale.

132.   The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court.

133.   Questions of law and fact common to plaintiff and the class include:

    a.   Whether "Naturally Derived Growth Factor" as described in this complaint contains any actual HGH.

    b.   Whether "Naturally Derived Growth Factor" as described in this complaint is effective in stimulating the human body to secrete HGH;

c.  Whether the GH products provide any of the benefits the defendants claim;

d.  Whether the GH products' labeling includes any disease claims;

e.  Whether the GH products' marketing and advertising promotes the product for uses that cause it to be a drug, for example, to prevent or mitigate disease;

f.  Whether the GH products' label is false or misleading in any particular;

g.  Whether the GH products' non-label marketing or advertising is false or misleading in any particular;

h.  Whether the GH products are misbranded within the meaning of the FDCA or Sherman Law;

i.  Whether the GH products' label and advertising claims created express warranties;

j.  Whether defendants made any implied warranties as to the GH products.

k.  The proper amount of restitution;

l.  The proper amount of damages and punitive damages;

m.  The proper amount of reasonable attorneys' fees; and

n.  The propriety of injunctive relief.

134.  Plaintiff's claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to defendants' conduct.

135.  Plaintiff will fairly and adequately represent and protect the interests of the class, has no interests incompatible with the interests of the class, and has retained counsel competent and experienced in class litigation.

136.  Questions of law and fact common to the class predominate over any questions affecting only individual class members.

137.  As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,**

**CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.***

**(By the Nationwide Class Against AARL and Bohen, and by the California Subclass**

**Against Soleil, Newtritional, and Williams)**

138.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

139.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

140.    As set forth herein, the defendants' statements relating to the GH Products are likely to deceive reasonable consumers and the public.

**Unfair**

141.    Defendants' conduct with respect to the labeling, advertising, and sale of the GH Products was unfair because defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

142.    Defendants' conduct with respect to the labeling, advertising, and sale of the GH Products was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, portions of the Dietary Supplement Health and Education Act of 1994, and portions of the California Sherman Food, Drug, and Cosmetic Law.

143.    Defendants' conduct with respect to the labeling, advertising, and sale of the GH Products was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

**Unlawful**

144.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2103 *et seq.*;
- The Lanham Act, 15 U.S.C. §§ 1501 *et seq.*;
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*
- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW,**

**CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.***

**(By the Nationwide Class Against AARL and Bohen, and by the California Subclass Against Soleil, Newtritional, and Williams)**

145.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

146.   The False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500.

147.   Defendants' claims are untrue or misleading in that the GH Products do not contain any actual HGH, and are ineffective in stimulating the body to increase its HGH production.

148.   Defendants knew, or reasonably should have known, that their claims regarding the GH Products were untrue or misleading.

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,**

**CAL. CIV. CODE §§ 1750 *ET SEQ.***

**(By the Nationwide Class Against AARL and Bohen, and by the California Subclass**

**Against Soleil, Newtritional, and Williams)**

149.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

150.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

151.   Defendants' policies, acts, and practices were designed to, and did, result in the purchase and use of the GH Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

   a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised;

   d.   § 1770(a)(13): making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; and

   e.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

152.   As a result, plaintiff and the class members have suffered irreparable harm and are entitled to injunctive relief.

153.   In compliance with Cal. Civ. Code § 1782, on April 28, 2014, plaintiff sent written notice to defendants AARL and Bohen, who have failed, after 30 days, to satisfy plaintiff's demand and rectify the behavior. Accordingly, plaintiff and the class are entitled, from AARL and Bohen, to their actual damages, punitive damages, and reasonable attorneys'

35

fees and costs. A true and correct copy of plaintiff's notice letter is attached hereto as <u>Exhibit 9</u>.

154.   In compliance with Cal. Civ. Code § 1782, on November 21, 2014, plaintiff sent written notice to defendants Soleil, Newtritional, and Williams, who have failed, after 30 days, to satisfy plaintiff's demand and rectify the behavior. Accordingly, plaintiff and the class are entitled, from Soleil, Newtritional, and Williams, to their actual damages, punitive damages, and reasonable attorneys' fees and costs.   True and correct copies of plaintiff's notice letters are attached hereto as <u>Exhibits 10-11</u>.

155.   In compliance with Cal. Civ. Code § 1782(d), plaintiff's affidavit of venue is filed concurrently herewith, attached to the Complaint.

**FOURTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY, CAL. COMM. CODE § 2313**

**(By the Nationwide Class Against AARL and Bohen, and by the California Subclass Against Soleil, Newtritional, and Williams)**

156.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

157.   There was a sale of goods from each of the defendants to plaintiff and the class members.

158.   Defendants each made affirmations of fact or promises that the GH Products bestow numerous and specific health benefits. This formed part of the basis of the bargain. Each of the defendants thus expressly warranted the goods sold.

159.   Defendants breached the warranty in that the GH Products do not contain HGH, are ineffective, and do not stimulate HGH production.

160.   Plaintiff and the class members suffered injury as a result of defendants' breach in that they paid money for ineffective products.

161.   Prior to filing this suit, plaintiff, on behalf of herself and the class, gave every defendant notice of the breach.

## FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,

## CAL. COMM. CODE § 2313(1)

## (By the Nationwide Class Against AARL and Bohen, and by the California Subclass Against Soleil, Newtritional, and Williams)

162.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

163.    "Unless excluded or modified . . . a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1).

164.    There was a sale of goods from defendants to plaintiff and the class members.

165.    Defendants impliedly warranted that the goods sold were merchantable.

166.    Defendants breached the warranty in that the GH Products are and were ineffective.

167.    Plaintiff and the class members suffered injury as a result of defendants' breach in that they paid money for an ineffective product.

168.    Prior to filing this action, plaintiff, on behalf of herself and the class, gave each defendant notice of the breach.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS, CAL. COMM. CODE § 2315

## (By the Nationwide Class Against AARL and Bohen, and by the California Subclass Against Soleil, Newtritional, and Williams)

169.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

170.    "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Cal. Comm. Code § 2315.

37

171.   There was a sale of goods from defendants to plaintiff and the class members.

172.   Defendants impliedly warranted the goods sold were fit for their particular purpose, *i.e.*, stimulating the body's HGH production.

173.   Defendants breached the warranty in that the GH Products were ineffective.

174.   Plaintiff and the class members suffered injury as a result of defendants' breach in that they paid money for ineffective products.

175.   Prior to filing this suit, plaintiff, on behalf of herself and the class, gave each defendant notice of the breach.

## EIGHTH CAUSE OF ACTION

## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT,

## 15 U.S.C. §§ 2301 *ET SEQ*.

## (By the Nationwide Class Against All Defendants)

176.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

177.   The GH Products are consumer products within the meaning of 15 U.S.C. § 2301(1).

178.   Plaintiff and the class members are consumers within the meaning of 15 U.S.C. § 2301(3).

179.   Defendants are each suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) & (5).

180.   The Magnuson-Moss Warranty Act permits a consumer to recover damages caused "by the failure of a supplier, warrantor, or service contractor to comply with any obligation under his [Act], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1).

181.   Each of the defendants' claims regarding the GH Products are "written warranties" within the meaning of the Act because each is an "affirmation of fact or written promise made in connection with the sale of" the product, "which relates to the nature of the

material . . . and affirms or promises that such material . . . is defect free or will meet a specified level of performance . . . ." 15 U.S.C. § 2301(6)(A).

182.   As set forth herein, the GH Products do not perform as warranted.

183.   Although the GH Products do not meet the promised specification, defendants have so far failed to refund purchasers their money, even after plaintiff, on behalf of the class, made a pre-litigation demand for such relief on behalf of herself and the class.

184.   By reason of defendants' breach of these express written warranties, each defendant has violated the statutory rights due plaintiff and the class members pursuant to the Magnuson-Moss Warranty Act, thereby damaging plaintiff and the class members. 15 U.S.C. §§ 2301 *et seq.*

185.   Plaintiff and the class were injured as a direct and proximate result of defendants' breach because: (a) they would not have purchased the GH Products on the same terms if the true facts concerning their purported actual HGH content or stimulation of HGH production had been known to them; (b) they paid a price premium due to defendants' misleading representations that the GH Products either contain HGH or stimulate HGH production, and (c) the GH Products do not perform as promised (or at all).

186.   Plaintiff, on behalf of herself and the class members, seeks relief pursuant to 15 U.S.C. §§ 2310(d)(1)-(2).

**NINTH CAUSE OF ACTION**

**VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES**

**New Mexico Statutes Annotated §§ 57-12-1 *et seq.***

**(By the California Subclass Against Defendant Soleil)**

187.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

188.   Under New Mexico law, an "unfair or deceptive trade practice" means any act specifically declared unlawful pursuant to the New Mexico Unfair Practices Act, or a false or misleading oral or written statement, visual description or other representation of any kind

knowingly made in connection with the sale of goods that may, tends to, or does deceive or mislead any person and includes, as applicable here:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have;

(7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(17) failing to deliver the quality or quantity of goods or services contracted for[.]"

189.    Moreover, an "unconscionable trade practice" under the New Mexico statute means "an act or practice in connection with the sale . . . of any goods or services . . . that to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid."

190.    Defendants violated the New Mexico Unfair Trade Practices Act by representing that the GH Products have characteristics, ingredients, uses, benefits or quantities that they do not have.

191.    Defendants violated the New Mexico Unfair Trade Practices Act by representing that GH Products are of a particular standard, quality or grade when they are not.

192.    Defendants violated the New Mexico Unfair Trade Practices Act by using exaggeration, innuendo or ambiguity as to the efficacy of the GH Products.

193.    Defendants violated the New Mexico Unfair Trade Practices Act by failing to deliver the quality or quantity of goods or services contracted for, namely, GH Products that would the effects and health benefits the defendants represented.

194.    Defendants also violated the New Mexico Unfair Trade Practices Act by engaging in "unconscionable trade practice" in that the sale of the GH Products was to plaintiff's detriment and the detriment of other class members because:

(1) defendants took advantage of the lack of knowledge, ability, experience or capacity of plaintiff to a grossly unfair degree; and

(2) the sale and purchase of the GH Products resulted in a gross disparity between the value received by plaintiff and the price paid.

## TENTH CAUSE OF ACTION

## VIOLATION OF ALABAMA UNFAIR TRADE PRACTICES ACT

## ALA. CODE §§ 8-19-5 *et seq.*

**(By the California Subclass Against Defendants Newtritional and Williams)**

195.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

196.    The following deceptive acts or practices, which are applicable here, are defined in the Alabama state code § 8-19-5 and deemed unlawful:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;

(7) Representing that goods or services are of a particular standard, quality, or grade;

(9) Advertising goods or services with intent not to sell them as advertised;

(21) Intentionally misrepresenting that a warranty or guarantee confers or involves certain rights or remedies; and

(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

197.    Defendants violated the Alabama Unlawful Trade Practices Act by representing that the GH Products have ingredients, uses, benefits, or qualities that they do not have.

198.    Defendants violated the Alabama Unlawful Trade Practices Act by representing that the GH Products are of a particular standard, quality, or grade though they are not.

41

199.   Defendants violated the Alabama Unlawful Trade Practices Act by advertising the GH Products with intent not to sell them as advertised.

200.   Defendants violated the Alabama Unlawful Trade Practices Act by intentionally misrepresenting that a warranty or guarantee confers or involves certain rights or remedies that it does not.

201.   Defendants violated the Alabama Unlawful Trade Practices Act by engaging in unconscionable, false, misleading, or deceptive acts or practices in the course of their marketing and sale of GH 2000 and AEON.

## PRAYER FOR RELIEF

202.   Wherefore, plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against defendants as to each and every applicable cause of action, including:

a.   An Order certifying this as a class action and appointing plaintiff and her counsel to represent the classes;

b.   An Order enjoining defendants from selling the GH Products, or enjoining them from advertising or marketing the GH Products in the manner alleged;

c.   An Order compelling defendants to conduct a corrective advertising campaign to inform the public that the GH Products are and were ineffective;

d.   An Order requiring defendants to disgorge or return all monies, revenues, and profits obtained by any means of wrongful act or practice;

e.   An Order requiring defendants to pay all actual and statutory damages permitted under the causes of action alleged herein, including punitive damages;

f.   An Order requiring defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an

*Kossick v. AntiAging Research Laboratories, Inc.*, *et al*
CLASS ACTION COMPLAINT

unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

g.    An Order awarding costs, expenses, and reasonable attorneys' fees; and

h.    Any other and further relief the Court deems necessary, just, or proper.

## JURY DEMAND

203.    Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: March 9, 2015          /s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
TRAN NGUYEN (SBN 310593)
*tran@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiff and the Proposed Classes***

*Kossick v. AntiAging Research Laboratories, Inc., et al*
CLASS ACTION COMPLAINT

1  **THE LAW OFFICE OF JACK**
2  **FITZGERALD, PC**
   JACK FITZGERALD (257370)
3  *jack@jackfitzgeraldlaw.com*
   TREVOR M. FLYNN (253362)
4  *trevor@jackfitzgeraldlaw.com*
5  TRAN NGUYEN (310593)
   *tran@jackfitzgeraldlaw.com*
6  Hillcrest Professional Building
7  3636 4th Ave., Ste. 202
   San Diego, CA 92103
8  Phone: (619) 692-3840
9  Fax: (619) 362-9555

10 *Counsel for Plaintiffs and the Putative Class*

11         **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
12
13 MARY KOSSICK, on behalf of herself and all
   others similarly situated,
14
15         Plaintiff,
16
                v.
17
   ANTIAGING RESEARCH                     **CONSUMERS LEGAL REMEDIES**
18 LABORATORIES, INC., ROBERT BOHEN,      **ACT VENUE AFFIDAVIT [CCP §**
   RINAJA SOLEIL (individually and d/b/a  **1780(d)]**
19 VITALITY RESOURCES),
20 NEWTRITIONAL HEALTH CARE, LLC,
   and ROY WILLIAMS (individually and d/b/a
21 VITALITY RESOURCES),
22
23         Defendants.

24
25
26
27
28

I, Mary Kossick, declare as follows:

1.    I am a plaintiff in this action. I make this affidavit as required by California Civil Code § 1780(d).

2.    The Complaint in this action is filed in a proper place for the trial of this action because defendant is doing business in this county.

3.    The Complaint in this action is further filed in a proper place for the trial of this action because the transactions that are the subject of the action occurred in this county.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 9 day of ~~February,~~ MARCH 2015, at South San Francisco, California.

_Mary Kossick_
Mary Kossick

_Kossick v. Antiaging Research Laboratories, Inc. et al._
CCP § 1780(d) VENUE AFFIDAVIT